IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN R. RIDGLEY, )
)
Plaintiff, )
)
)   Civil Action No. 24-cv-3633-LKG
v. )
)   Dated: January 23, 2026
WILLIAM BAILEY, )
)
Defendants. )
)
)

### MEMORANDUM OPINION

Self-represented plaintiff John R. Ridgley, who was then a state inmate, filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against William Bailey, Warden of Eastern Correctional Institution ("ECI"). ECF No. 1. Ridgley seeks monetary damages and the firing of Defendant Bailey for a number of issues arising during his confinement at ECI. *Id.*

In response to the Complaint, Defendant filed a Motion to Dismiss or, in the alternative, for Summary Judgment.[1] ECF No. 13. Ridgley was advised of his right to file an opposition response to Defendant's motion and of the consequences for failing to do so. ECF No. 16. To date, Ridgley has not filed a response. The matter is now ripe and ready for review. For the reasons discussed below, Defendant's Motion shall be granted.

I.   **Background**

a.   **Amended Complaint Allegations**

In his unverified Amended Complaint,[2] Ridgley alleges that since March 19, 2024, his property was lost, and he was placed on segregation. ECF No. 1 at 4. He states that he was not

---

[1] Defendant's Motion to Seal Exhibit 2 (ECF No. 15), unopposed, is granted.

[2] Initially Ridgley filed a civil rights case along with fellow inmate Brandon Sweetman. *See Sweetman v. Bailey, et al.*, Civil Action No. SAG-24-1004 (D. Md.) ECF No. 1. In that case, on October 23, 2024, Ridgley was directed to advise the Court how he wished to proceed. *Id.*, ECF No. 14. On November 18, 2024, Ridgley responded to the Court's Order (ECF No. 17), and on December 16, 2024, his claim was instituted as a new and separate civil rights complaint under this case number, and he was terminated from Civil Action No. SAG-24-1004. *Id.*, ECF No. 19; see also ECF No. 1.

given daily recreation or showers and went a week without hygiene items. *Id.* He also asserts that his bed and cell walls had human waste dripping on them from leaking toilets above and he was not provided new bedding after his bedding was soiled. *Id.* at 4-5. Additionally, there was mold in the vents. *Id.* at 4. Ridgley further claims he was denied medical care and that he fell and hit his head. *Id.* He states that he did not get the 2000 calorie a day diet and that there are fire hazards, including exposed wires in his cell. *Id.* Ridgley further asserts that his outgoing mail was tampered with, and he was denied religious programming. *Id.* at 5. In Ridgley's view, food was used as punishment for those held on segregation. *Id.* Ridgley states that he notified the Warden of all that was "going on," and he alleges that the Warden signed a contract, the orientation handbook, to provide a safe environment. *Id.* at 4.

### b. Defendant's Response

Defendant asserts that the Amended Complaint should be dismissed because, among other reasons, Ridgley failed to exhaust his administrative remedies before initiating this case. ECF No. 13-1 at 7-10.

Jacqueline Hair, Request for Administrative Remedy ("ARP") Coordinator at ECI, attests that Ridgley filed a number of ARPs while incarcerated at ECI. ECF No. 13-2, Attachments. Ridgley's ARPs raised concerns regarding the packing of his property (ECF 13-2 at 3-4), receipt of recreation (*id.* at 8-9.), receipt of medical care (*id.* at 10-20), wires and dripping water in the cell (*id.* at 21-22), religious services (*id.*, at 24), bedding (*id.* at 26-27), and black mold in showers (*id.* at 28). Several ARPs were voluntarily withdrawn by Ridgley. *Id.* at 5, 23 30,

Robin Woolford, Deputy Director of the Incarcerated Individual Grievance Office ("IIGO"), attests that a review of records demonstrates that Ridgley did not file any grievances with the IIGO at any time. ECF No. 13-4, ¶¶ 4-5.

### II. Standard of Review

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for

summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendant filed his Motion as a motion to dismiss, or in the alternative, for summary judgment, Ridgley was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. To date, Ridgley has not filed a response to Defendant's Motion. Accordingly, the Court will rule on Ridgley's claim under the Rule 56(a) standard where appropriate.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court is mindful, however, that Ridgley is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts

which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. Analysis

Defendant raises the affirmative defense that Ridgley failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'... normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

4

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see also Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process" so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. 2d at 530; s*ee also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where he did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *see also Griffin v. Bryant*, 456 F.4th 328 (4th Cir. 2022) (recognizing PLRA's "strict" requirement to exhaust all available administrative remedies").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The ... PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines ...." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo*, 286 F.3d at 1024). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] ... when prison officials prevent inmates from using the administrative process").

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for

5

"inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] …." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IIGO. However, if the prison has a grievance procedure that is approved by the IIGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IIGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IIGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[3] When filing with the IIGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP

---

[3] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

6

appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it "without a hearing ...." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IIGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10- 209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Here, the documentation and declarations submitted show that while Ridgley began the ARP process regarding some of his claims, e.g. the failure to receive out of cell recreation, the failure to provide medical care, denial of religious services, loss of property, and cell conditions, he failed to complete the ARP process as to any of his claims. Defendant has met his burden because Robin Woolford attests that Ridgley did not file any appeals to the IIGO. Ridgley has not come forward with any evidence to contradict Defendant's assertions or otherwise explain his failure to fully exhaust his administrative remedies before filing this case. The Amended Complaint will therefore be dismissed without prejudice for failure to exhaust administrative remedies.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment is granted.[4] The Complaint is dismissed without prejudice.

A separate Order follows.

1-23-2026
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[4] As Ridgley failed to exhaust his administrative remedies, the Court need not address Defendant's remaining arguments.